IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GRIFFIN WHITAKER, LLC       :

                                :

     v.                       :    Civil Action No. DKC 10-0725

                                :

JERRY WAYNE TORRES, et al.    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract dispute are motions filed by Defendants Jerry Wayne Torres and Torres Advanced Enterprise Solutions, LLC, to dismiss for lack of personal jurisdiction (paper 8), and by Plaintiff Griffin Whitaker, LLC, for summary judgment (paper 4, 14).[1]  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendants' motion will be granted and Plaintiff's motions will be denied as moot.

**I.  Background**

The following facts are either undisputed or construed in a light most favorable to Plaintiff.  Plaintiff Griffin Whitaker,

---

[1] Plaintiff filed a motion for summary judgment concomitantly with the filing of its complaint in state court. (Paper 4).  Following removal by Defendants, Plaintiff filed a "motion for entry of judgment" (paper 14), citing Defendants' failure to respond to its motion for summary judgment. Defendants filed papers opposing Plaintiff's motion for judgment on April 28, 2010.  (Paper 18).

LLC, a Maryland limited liability company, is a law firm located in Greenbelt, Maryland. Defendant Jerry Wayne Torres is a resident of the Commonwealth of Virginia, and Defendant Torres Advanced Enterprise Solutions, LLC ("TAES"), is a Delaware limited liability company with its principal place of business in Arlington, Virginia. Defendant Torres is the sole member of TAES.

On or about August 4, 2008, Defendants executed a retainer agreement with Plaintiff to represent them in a law suit pending in the United States District Court for the Eastern District of Virginia. Plaintiff subsequently provided approximately 701 hours of legal services related to the Virginia suit. Over the course of Plaintiff's representation, Defendants never came to Plaintiff's offices in Maryland, but one deposition was conducted there and A. Jeff Ifrah, another attorney representing Defendants in the underlying matter, met with Plaintiff's attorneys in their Maryland offices on several occasions. When Plaintiff submitted invoices for services rendered in August and September 2009, Defendants refused to pay. This law suit followed.

On January 7, 2010, Plaintiff filed its complaint in the Circuit Court for Prince George's County, Maryland, alleging breach of contract and quantum meruit (paper 2), and concomitantly moved for summary judgment (paper 4). On March

24, 2010, Defendants removed the case to this court on the basis of diversity of citizenship (paper 1) and, one week later, filed the instant motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) (paper 8).

## II. Analysis

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and/or discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan Labs.*, 2 F.3d at 60. In determining whether the plaintiff has established a *prima facie* case, the court "must

3

draw all reasonable inferences arising from the proof, and resolve all factual disputes in the plaintiff's favor." *Mylan Labs*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

"The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction" over the defendant. *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). A court may exercise general jurisdiction, by contrast, only where a defendant maintains "continuous and systematic" contact with the forum state. *Helicopteros*, 466 U.S. at 415 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)). Here, Plaintiff argues that this court may exercise specific jurisdiction insofar as the alleged breach of the retainer agreement arises from Defendants' contacts with the State of Maryland.[2]

_____

[2] The declaration of attorney Edward N. Griffin additionally states that "Defendants have contracted for services and[/]or transacted business with individuals residing in the State of Maryland on numerous occasions," including with the plaintiffs in the underlying matter, "who maintained an office in

A federal district court may exercise specific personal jurisdiction over a nonresident defendant if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003). Because it limits specific jurisdiction to cases in which the cause of action "aris[es] from any act enumerated," however, a plaintiff relying upon the long-arm statute must still "'identify a specific Maryland statutory provision authorizing jurisdiction.'" *Johansson Corp.*, 304 F.Supp.2d at 704 (quoting *Ottenheimer Publishers,*

---

Rockville, Maryland." (Paper 13, Ex. 1, ¶¶ 12 13). To the extent that Plaintiff makes these assertions in support of an argument that general jurisdiction exists, they are insufficient to support such a claim. *See Glynn v. EDO Corp.*, 641 F.Supp.2d 476, 486 (D.Md. 2009) ("Only when the 'continuous corporate operations within a state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities' may a court assert general jurisdiction." (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

The clear thrust of Plaintiff's opposition papers is that Defendants' contacts with it pursuant to the retainer agreement give rise to specific jurisdiction in this court. The court will conduct its analysis accordingly.

*Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001)). Although Plaintiff does not identify a specific statutory provision, it appears to rely on Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), which confers personal jurisdiction over a person that "transacts any business or performs any character of work or service in the State."[3]

In the constitutional analysis, the crucial issue is whether the defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414). Where a nonresident defendant has

---

[3] Defendants contend that Plaintiff's failure to identify a statutory basis for jurisdiction is grounds for dismissal, citing *Johansson Corp.*, 304 F.Supp.2d at 704 & n. 1. *See also Sports Group, Inc. v. Protus IP Solutions, Inc.*, RDB 08-3388, 2009 WL 1921151, at *6 (D.Md. July 1, 2009); *Schafler v. Euro Motor Cars*, RWT-08-2334, 2009 WL 277625, at *2 n. 4 (D.Md. Feb. 5, 2009). Although Plaintiff, a law firm, certainly should be aware of this requirement, the court declines to dismiss on this ground. *See Beyond Systems, Inc. v. Kennedy Western University*, DKC 2005-2446, 2006 WL 1554847, at *5 (D.Md. May 31, 2006).

purposefully engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

In *Johansson*, 304 F.Supp.2d at 705, Judge Blake set forth the relevant considerations for analyzing minimum contacts in the context of a contract dispute involving an out-of-state defendant:

> The Supreme Court has made clear that an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. 2174; *see also Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md. 2000). Among the specific facts that courts have weighed are "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity*, 93 F.Supp.2d at 626 (internal quotation omitted). One of the most important factors

is "whether the defendant initiated the business relationship in some way." *See id.* at 626-27 (quoting *Nueva Eng'g, Inc. v. Accurate Elecs., Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986)). Ultimately, the question is whether the contract had a "substantial connection" to the forum state. *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000).

Here, the only evidence submitted by Plaintiff is the affidavit of Edward N. Griffin, a member of the law firm, averring that: (1) the retainer agreement "was drafted by [him] and the offer conveyed and[/]or entered into in the [f]irm's offices in Greenbelt, Maryland" (paper 13, ex. 1, at ¶ 6); (2) the firm's attorneys participated in "dozens of phone calls" with Defendants from their offices, received and maintained "[d]ozens of boxes of documents" related to the underlying litigation, and received payments from Defendants in Maryland (*id.* at ¶¶ 7-9); (3) one deposition was conducted in Plaintiff's offices (*id.* at ¶ 10); and (4) Mr. Ifrah met with the firm's members in their Maryland offices "on several occasions" and was "often directed by Mr. Torres to assist with the [f]irm's work in the [m]atter" at that location (*id.* at 11). Even assuming the truth of these statements, Plaintiff has failed to establish a *prima facie* case for this court's exercise of personal jurisdiction.

First, Plaintiff has not set forth any evidence regarding which party initiated the business relationship that resulted in the retainer agreement, nor has it addressed any negotiations that led to the execution of the agreement or provided detail as to its terms. *See CoStar Realty Information, Inc. v. Meissner*, 604 F.Supp.2d 757, 766 (D.Md. 2009) (the "essential factor in determining whether business transactions give rise to specific jurisdiction is whether the defendant initiated the contact"); *Nueva Eng'g, Inc. v. Accurate Electronics, Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986) (noting that the Fourth Circuit "seems to have adopted the determination of whether the defendant initiated the business relationship in some way as a dispositive factor"). In his affidavit on behalf of Defendants, Mr. Torres asserts that "[t]he fact that plaintiffs have an office in Maryland was irrelevant to the decision to retain them," and that "the plaintiff firm was retained because its lawyers are licensed in Virginia." (Paper 8, Ex. 1, at ¶¶ 6-7).[4] These averments do not address whether Defendants actually initiated the contact that resulted in the execution of the retainer agreement, and the court cannot assume that they did, particularly where the affidavit submitted by Plaintiff fails to

---

[4] Notably, Mr. Griffin, who appears to be one of two members of the firm, is not licensed to practice law in Virginia. (Paper 13, Ex. 1, at ¶ 3).

address this critical issue. *See Mun. Mortgage & Equity*, 93 F.Supp.2d at 627 (dismissing for lack of personal jurisdiction where the record demonstrated that the plaintiff "courted" the defendant's business).

Moreover, the fact that Plaintiff drafted the retainer agreement, made phone calls, received documents and payments from Defendants, and conducted a deposition and met with Mr. Ifrah in its Maryland offices does not justify this court's exercise of personal jurisdiction. As Judge Motz recently explained in *Frieman v. Flipping for Phonics, Inc.*, Civ. No. JFM-09-2903, 2010 WL 817192, at *1-2 (D.Md. Mar. 4, 2010):

> [T]o the extent that plaintiff relies upon his own work that he did for defendant in Maryland, his position was rejected by the Maryland Court of Special Appeals in *Zavian v. Foudy*, 130 Md.App. 689, 747 A.2d 764 (2000). There, the court expressly stated that a person's performance of professional services in Maryland would not support the assertion of personal jurisdiction over the corporation or other person for whom plaintiff performed the work in an action between the two. *Id*. at 700, 747 A.2d 764. Moreover, plaintiff has alleged no facts that would support an inference or a conclusion that he was defendant's "agent," as opposed to an independent contractor. To accept his argument would, in effect, subject an out of state defendant to jurisdiction in Maryland solely because of plaintiff's unilateral activities in Maryland, regardless of the nature of the relationships between the plaintiff and the defendant and the total absence of any other contacts between defendant and Maryland.

In *Zavian*, a case relied upon by Defendants, a Maryland attorney sued four non-resident former clients for breach of personal management agreements. After the circuit court granted the defendants' motion to dismiss for lack of personal jurisdiction, the attorney appealed. The Court of Special Appeals of Maryland considered two discrete claims: (1) whether the attorney's "activities in Maryland as agent for the appellees," *i.e.*, making phone calls, sending mailings, and conducting negotiations, "provides sufficient contacts with Maryland" for the exercise of personal jurisdiction, and (2) whether "the [a]ppellees have had sufficient contacts with appellant in Maryland, apart from her activities as their agent." *Zavian*, 130 Md.App. at 695.

In considering the first question, the appellate court found persuasive a line of decisions in the United States District Court for the Southern District of New York, the United States Court of Appeals for the Seventh Circuit, and the United States District Court for the Northern District of Illinois. In *Copeland v. Life Science Technologies, Ltd.*, No. 97 Civ. 0456(SHS), 1997 WL 716915 (S.D.N.Y. Nov. 17, 1997), the court explained that "[i]n a suit between an agent and his out-of-state principal, there is no jurisdiction over the principal where the plaintiff-agent is relying on his own activities within the State, rather than on defendant's independent

11

activities." *Copeland*, 1997 WL 716915, at *1 (internal marks omitted). Rather, a "'plaintiff must point to acts by the defendant, independent of the plaintiff-agent's acts, which are sufficient in themselves to confer jurisdiction.'" *Id.* (quoting *Kulas v. Adachi*, No. Civ. 6674(MBM), 1997 WL 256957 at *3 (S.D.N.Y. May 16, 1997)). Similarly, in *Emmet, Marvin & Martin v. Maybrook, Inc.*, No. 90 Civ. 3105, 1990 WL 209440, at *2 (S.D.N.Y. Dec. 12, 1990), the court found that the New York Court of Appeals had "made clear that where an attorney sues an out-of-state client, the personal jurisdiction inquiry must focus on the client's purposeful activities in the state, not on the attorney's activities on behalf of the client." *See also Orton v. Woods Oil & Gas Co.*, 249 F.2d 198, 202-03 (7th Cir. 1957) ("the performance of the professional services by plaintiffs for the benefit of defendant as herein outlined, standing alone, [is] insufficient to bring defendant within any reasonable construction of the [Illinois long-arm statute]."); *Jacobson v. Stram*, No. 80 C 1228, 1980 U.S. Dist. LEXIS 15437 at *5 (N.D.Ill. Oct. 29, 1980) ("An attorney's mere performance of professional services in Illinois on behalf of an out-of-state client is not sufficient to subject the foreign party to *in personam* jurisdiction in Illinois."); *Geldermann & Co. v. Dussault*, 384 F.Supp. 566, 573 (N.D.Ill. 1974) (same).

Based on those decisions, the *Zavian* court concluded, in response to the first question, that the attorney's "Maryland activities as agent for the nonresident appellees does not subject them to Maryland's long arm statute." 130 Md.App. at 699. The court added that it also did not consider the attorney's services on behalf of her former clients to constitute transacting business in Maryland:

> The professional services rendered by appellant in Maryland for the nonresident appellees could best be termed as business **from** Maryland, or as the Supreme Court put it, "unilateral activity," rather than business **within** Maryland. These services could have been conducted from [anywhere].

*Zavian*, 130 Md.App. at 700 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (footnote omitted) (emphasis in original)).

In addressing the second question, *i.e.*, "whether the nonresident appellees had sufficient contacts with Maryland to enable Maryland's courts to exercise personal jurisdiction over them," the appellate court focused on the appellees' contacts with the State. *Id*. The court found:

> Although the appellees contacted appellant to obtain her professional services, it was because her name appeared on a list of lawyers willing to perform such services for female athletes and not because she was a Maryland lawyer. . . . In fact, appellees had little or no negotiations with appellant. She simply prepared, mailed, or faxed proposed personal management agreements to each appellee, and each appellee executed and mailed or faxed the

> agreement to appellant. The appellees did
> not visit Maryland for purposes of receiving
> appellant's services. Although appellant's
> suit claims unpaid invoices, this means only
> that appellant has not received a check from
> California, North Carolina, or Connecticut
> [the states in which the appellees resided].

*Id.* at 701. Under those circumstances, the court determined
that the "appellees did not purposefully engage in adequate
activities in Maryland to avail them either of the benefits or
the protection of Maryland law." *Id.* at 702.

Plaintiff makes a weak attempt to distinguish *Zavian*,
arguing that "it appears, contrary to the [d]efendant's
assertion, that the attorney was merely making phone calls as
part of a marketing relationship," and that one of the decisions
upon which the court relied "appears similarly to reflect
factual situations in which there are sparse contacts with the
forum." (Paper 13, ¶¶ 8, 9). These arguments misconstrue the
critical point of the decision, namely, that unilateral in-state
activities on behalf of a non-resident client are insufficient
to establish personal jurisdiction over the client. The only
legal argument advanced by Plaintiff in support of its
opposition is that Mr. Griffin's affidavit is sufficient to
"rebut the allegation of lack of personal jurisdiction," thus
the "burden to refute that evidence shifts to the [d]efendants,"
citing *Burger King Corp.*, 471 U.S. at 477, and that granting
Defendant's motion would unfairly "increase the collection costs

to Plaintiff in a matter in which there is no legitimate defense, thus making it difficult for Plaintiff to obtain 'convenient and effective relief,'" quoting *World-Wide Volkswagen Corp., et al.*, 444 U.S. at 292. (Paper 13, ¶¶ 13, 14). The only "burden" referred to in the citation to *Burger King*, however, refers to the burden placed upon a defendant in defending a suit in the plaintiff's chosen forum, a factor to be considered "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State[.]" *Burger King*, 471 U.S. at 476. While "the plaintiff's interest in obtaining convenient and effective relief" is a countervailing factor to be weighed against the burden to the defendant, *World-Wide Volkswagen Corp., et al.*, 444 U.S. at 292, this analysis only becomes relevant once the plaintiff has met its initial burden of demonstrating that personal jurisdiction in its chosen forum is proper. That showing is precisely what is lacking here.

Although Mr. Griffin's affidavit is somewhat vague, it appears that, like the attorney in *Zavian*, he drafted the retainer agreement in Plaintiff's office and submitted it to Defendants, who then signed and returned it. It is undisputed that Defendants never set foot in Plaintiff's Maryland offices and that Plaintiff's performance of the agreement was to occur in Virginia. To the extent that the attorneys of the plaintiff

firm cite work they performed in their Maryland offices on behalf of Defendants, that work was clearly unilateral in nature, and those activities alone are insufficient to establish personal jurisdiction over Defendants. Plaintiff has put forth no evidence of Defendants' independent contacts with Maryland sufficient to confer personal jurisdiction upon them.

Plaintiff additionally requests that the court consider granting jurisdictional discovery to permit it "to probe the veracity of Defendants' claim of an absence of contacts with the State of Maryland." (Paper 13, ¶ 15). Plaintiff claims to know of "at least one business relationship with an entity with an office in Maryland besides the Plaintiff on the part of the Defendant," and asserts that "discovery will show that there are a multitude of business contacts with persons and entities in this State." (*Id.*). Defendants argue that this request should be denied as speculative.

The Federal Rules of Civil Procedure freely permit discovery that is broad in scope and grant district courts "broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan Labs, Inc.*, 2 F.3d at 64 (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)) (alterations in original). "When a plaintiff offers only speculation or conclusory assertions about [a defendant's] contacts with a forum state" in

the face of specific denials by the defendant, the court is within its discretion to deny the plaintiff's request for jurisdictional discovery. *Carefirst*, 334 F.3d at 402-03; *see also Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988).

Here, having devoted the vast majority of its opposition papers to its claim that Defendants are subject to specific personal jurisdiction, Plaintiff appears to request jurisdictional discovery in the hope that it may find a basis for asserting general jurisdiction. Mr. Torres' affidavit clearly states, however, that "TAES does not maintain an office in the State of Maryland, nor has it ever done any business or provided services to any customers in the State of Maryland." (Paper 8, Ex. 2, at ¶ 14). In rebuttal, Plaintiff contends that the plaintiff in the underlying litigation, which arose out of a business dispute with Defendants, maintains an office in Rockville, Maryland. (Paper 13, Ex. 1, at ¶ 13). Defendants attach to their reply papers a copy of the underlying complaint in which the plaintiffs in that case assert that they are citizens and residents of the State of Florida. (Paper 19, Ex. 1, at ¶¶ 4-5).

Under these circumstances, Plaintiff's request for jurisdictional discovery will be denied, as Plaintiff offers nothing more than "conclusory assertions about [Defendants']

contacts with a forum state," *Carefirst*, 334 F.3d at 402-03, which Defendants have specifically denied. "[T]he [c]ourt need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition," *Rich*, 121 F.R.D. at 259, and that appears to be the case here.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted and Plaintiff's motions for summary judgment and for entry of judgment will be denied as moot. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge